IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TURN AND BANK HOLDINGS, LLC and PRECISION AIRMOTIVE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:19-CV-503 |
| AVCO CORPORATION and AVSTAR FUEL SYSTEMS, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Turn and Bank Holdings, LLC and Precision Airmotive, LLC have sued Avco Corporation and AVStar Fuel Systems, Inc. for trademark infringement arising out of sales of fuel injection servos, an airplane engine part. The defendants move to dismiss for lack of personal jurisdiction, contending they do not have minimum contacts with North Carolina. The defendants have purposefully availed themselves of jurisdiction here because Avco has made purposeful and deliberate contacts with North Carolina to sell these servos in its engines, AVStar has purposefully sold its servos through Avco's distribution channels here, and this alleged infringement is the latest step in a longstanding effort by the defendants to replace the plaintiffs and their predecessors in the servo market. Since the exercise of jurisdiction is also constitutionally reasonable, the motion to dismiss will be denied.

**I.     Procedural History**

The parties to this lawsuit and related entities have a long litigation history over intellectual property rights, including in this district. *See, e.g.*, *Avco Corp. v. Turn & Bank Holdings, LLC*, No. 4:12-CV-01313, 2018 WL 1706359 (M.D. Pa. Apr. 9, 2018); Memorandum & Order, *Avco Corp. v. Marvel-Schebler Aircraft Carburetors, LLC*, No. 4:10-cv-02026-JEJ, Doc. 35 (M.D. Pa. Feb. 7, 2011) (transferring carburetor-related trademark litigation to the Middle District of North Carolina). This case began in May 2019, when Precision[1] filed its complaint asserting that Avco and AVStar are infringing on its registered trademark rights in violation of federal statutory and North Carolina common law trademark protections, have committed unfair competition in violation of the Lanham Act, and have violated North Carolina's prohibition on unfair and deceptive trade practices. *See* Doc. 1 at ¶¶ 46–77. Precision also alleges that Avco and AVStar conspired to reverse-engineer Precision's products and to intentionally infringe on its trademarks to benefit from the goodwill associated with Precision's marks and to replace the Precision servos in the servo market. *Id.* at 7–12. The defendants move to dismiss for lack of personal jurisdiction. Doc. 14 at ¶ 1.[2]

---

[1] For ease of reading, the Court will refer to plaintiffs Turn and Bank and Precision collectively as Precision, unless more specific references are needed for clarity or accuracy.

[2] In the alternative, the defendants seek a transfer to the Middle District of Pennsylvania. Doc. 14 at ¶ 3. Precision has also asked for a preliminary injunction against the defendants barring their use of the allegedly infringing marks. Doc. 6. The Court will rule on these motions by separate order as time permits.

## II.  Personal Jurisdiction

The Supreme Court recognizes two types of personal jurisdiction: general (or "all-purpose") jurisdiction and specific (or "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). The parties agree that neither defendant is subject to general jurisdiction in North Carolina.[3] Accordingly, the Court will only consider whether the defendants are subject to specific jurisdiction.

Out-of-state defendants are subject to specific personal jurisdiction in a federal court only if both the forum state's long-arm statute and due process are satisfied. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). In North Carolina, these considerations are co-extensive. *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

To satisfy due process requirements, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).[4] This requires that a defendant have "purposefully directed his activities at the residents of the forum" and that the cause of action "arise[s] out of or relate[s] to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73

---

[3] The defendants contend there is no general jurisdiction, *see* Doc. 15 at 16, and Precision makes no argument to the contrary. *See* Doc. 32. Neither defendant was incorporated or has a place of business in North Carolina. *See* Doc. 1 at ¶¶ 5–6; *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

[4] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

(1985). "[T[he Supreme Court has rejected the exercise of jurisdiction where a defendant has merely placed a product into the stream of commerce foreseeing that it might ultimately reach the forum state," but sufficient contacts exist where a defendant has "targeted the forum with its goods." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012).

The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction in a three part test" in which courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). "Where, as here, the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* at 276.[5]

### A. Background and Jurisdictional Facts

To decide whether Precision made the requisite prima facie showing, the Court "must construe all relevant pleading allegations in the light most favorable to the

---

[5] Courts in the Fourth Circuit apply certain "nonexclusive factors" for evaluating purposeful availment "[i]n the business context." *Id.* at 278. Many of these factors assume facts not present here and apply instead to contract disputes, such as the forum selection clause of the parties' contract, communications between the parties about their business relationship, and the intended place of contract performance. *Id.* The Court has only considered those factors relevant to this dispute, which does not involve an agreement between Precision and the defendants.

4

plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (original emphasis omitted). The defendants have not denied many of Precision's allegations and have not refuted much of Precision's evidence, nor have they submitted evidence to address several of the factors relevant to jurisdiction. The Court has therefore taken these unrefuted allegations and declarations as true for the purposes of this motion and has drawn reasonable inferences in favor of Precision from these facts and as to facts on which the defendants have chosen to remain silent. *See id.*; *accord Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

The Court finds the following facts for the purpose of this motion only.

Turn and Bank is a North Carolina limited liability company that holds several trademarks used on fuel injection servos, which control the delivery of a combustible fuel-air mixture to aircraft engines. Doc. 1 at ¶¶ 2, 13, 17. The Bendix Corporation developed these servos in the 1960s and affixed marks to identify its servos consisting of the prefix "RSA" followed by a series of numbers and letters, e.g., "RSA-5AD1," "RSA-10AD1," and "RSA-10ED1." *Id.* at ¶¶ 14–16.[6]

In 2012, Turn and Bank bought the servo product line and licensed its intellectual property rights to Precision, a North Carolina limited liability company, for servo production. *Id.* at ¶¶ 3, 17; Doc. 32-2 at ¶ 6. All servo producers, from Bendix up to

---

[6] The United States Trademark and Patent Office listed nine of these RSA trademarks on the supplemental register in 2010 and four additional RSA trademarks on the principal register in 2014 and 2017. *See* Doc. 1 at ¶ 23; Doc. 1-1. Turn and Bank asserts common law trademark rights over these and several other similar marks that are not registered. Doc. 1 at ¶ 23.

Precision, have continuously manufactured and sold servos with these RSA marks. Doc. 1 at ¶ 18. As a result, buyers for decades have used these marks to identify this line of servos. *Id.* at ¶ 20; *Avco Corp.*, 2018 WL 1706359, at *8 (holding at summary judgment that the RSA marks have acquired secondary meaning). At present, Precision and Turn and Bank's operations are in Gibsonville and Burlington, North Carolina. Doc. 1 at ¶¶ 2–3; Doc. 32-2 at ¶¶ 7–8.

Avco is a Delaware corporation that for decades purchased servos from Precision's predecessors. Doc. 1 at ¶ 24. Around 2002, Avco began pressuring Precision's predecessor to reduce its servo prices. *Id.* When that company refused, Avco contracted with AVStar, a Florida corporation, to reverse-engineer the Precision line of servos and to then sell the servos to Avco as part of an overall plan by Avco for AVStar to replace Precision servos in the servo market. *Id.* at ¶¶ 24–26, 28; *see also Avco Corp.*, 2018 WL 1706359, at *2 (summarizing the "series of agreements" between AVStar and the Lycoming Engines division of Avco to use RSA servos). AVStar successfully reverse-engineered the servos, which the Federal Aviation Administration then approved. Doc. 1 at ¶ 30. In or around August 2012, Avco began selling AVStar servos with the same RSA marks used by Precision; AVStar affixed the RSA marks to its servos under its agreement with Avco, which indemnified AVStar for doing so. Doc. 1 at ¶¶ 28–30; *see also Avco Corp.*, 2018 WL 1706359, at *2 (finding at summary judgment that the defendants' agreements included "an obligation on the part of AVStar to use the same RSA-based model numbers used by Precision"). AVStar receives 98% of its servo revenue from Avco, it's "primary customer." Doc. 29-3 at ¶ 19; Doc. 15 at 15. Avco's

6

"sister" company, Cessna, also sells aircraft in North Carolina with AVStar's servos and Avco's engines. Doc. 32-2 at ¶ 13.

In April 2018, the United States District Court for the Middle District of Pennsylvania held on summary judgment that AVStar's use of the RSA marks violated Precision's trademark and that Avco induced this infringement. *See Avco Corp.*, 2018 WL 1706359, at *11. Within months of this decision, Avco and AVStar began selling servos and engines with servos bearing new marks that replaced the "RSA" prefix with "LFC" but that retained the same model numbers, including "LFC-5AD1," "LFC-10AD1," and "LFC-10ED1." *See* Doc. 1 at ¶ 33; Doc. 7-7 at 10–11; Doc. 15 at 8–9; Doc. 29-3 at ¶ 17. Precision's claims for trademark infringement in this case are based upon these new LFC marks, which Precision contends are confusingly similar to its valid RSA marks. Doc. 1 at ¶ 34.[7]

The record does not contain direct evidence that AVStar affixes the LFC marks to servos under an agreement with or at the direction of Avco. *See* Doc. 7-7 at 10–11; Doc. 7-8. However, this is a reasonable inference given that Precision's allegations to this effect remain undisputed, *see, e.g.*, Doc. 1 at ¶ 53; AVStar adopted the original RSA marks at Avco's direction and with Avco's indemnification, as noted above; and switching marks would have a "significant detrimental impact on AVStar's ability to provide products" to Avco. Doc. 29-3 at ¶ 19. AVStar also sells servos to others without

---

[7] The Middle District of Pennsylvania denied Avco and AVStar's motion to enjoin this action, stating that "the LFC issue is not properly before" it. Order, *Avco Corp. v. Turn & Bank Holdings LLC*, No. 4:12-CV-01313-MWB, Doc. 420 at 5 n.7 (M.D. Pa. July 23, 2019).

the LFC or RSA mark, *see* Doc. 1 at ¶ 41, which further indicates that AVStar uses the LFC marks on the servos it sells to Avco at Avco's direction. Taking all inferences in favor of Precision, the Court will so find.

Avco has two distributors in North Carolina and has sold engines with AVStar servos in North Carolina for years through these distributors. Doc. 32-2 at ¶ 12. These servos also enter North Carolina via sales of airplanes containing Avco engines. *Id.* at ¶ 13. Until recently, these servos contained the infringing RSA mark. *Id.* at ¶ 12; *see generally Avco Corp.*, 2018 WL 1706359, at *2. Avco advertises these two distributors on its website, which allows customers to search for distributors by geographic region to "find an authorized . . . distributor near you." *See* Doc. 32-2 at ¶ 14 & p. 7. It is reasonable to infer that Avco maintains ongoing relationships with North Carolina distributors and has an online search feature to solicit sales through these distributors from in and around North Carolina.

AVStar says it "has no record" of directly shipping any LFC products to North Carolina. Doc. 34-2 at ¶ 17. However, Avco has shipped at least one engine equipped with an AVStar LFC servo into North Carolina, *see* Doc. 15-4 at ¶ 19, which an end-user bought from Avco's distributor in Burlington, North Carolina. *See* Doc. 34-1 at ¶ 4.[8]

---

[8] Avco admits this shipment, *see* Doc. 15-4 at 3, but provides no details about it other than that the end purchaser, a South Carolina-based pilot, ordered it through Avco's distributor in Burlington, North Carolina. *See* Doc. 34-1 at ¶¶ 4–5. The reasonable inferences in favor of the plaintiffs are that Avco sold the engine to its distributor, and this sale took place in North Carolina. *See generally Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1369–70 (Fed. Cir. 2008) (discussing the facts relevant to determining the place of sale of a trademark-infringing product); *Berg Corp. v. C. Norris Mfg., LLC*, Civil No. JKB-19-00043, 2019 WL 1440155, at *4 (D. Md. Apr. 1, 2019) (drawing a reasonable inference in favor of the plaintiff to find purposeful availment, absent specifics as to the parties' contract negotiations).

There is no evidence that Avco intends to retreat from the North Carolina market, where it has regularly sold engines with AVStar's servos for years, *see* Doc. 32-2 at ¶ 12, and where its sister company Cessna regularly sells airplanes with Avco servos in the engines. *Id.* at ¶ 13. AVStar has also for years sold the RSA servos directly to consumers in North Carolina, *see id.* at ¶ 12, and similarly has presented no evidence its channels for selling servos have changed since it switched to the new LFC mark. *See* Doc. 34-2. As defendants have not denied that they intend to use the same distribution channels for the LFC servos and engines as they did for the RSA servos, it is reasonable to infer they intend to do so for LFC servo and engine sales into North Carolina.

Neither Avco nor AVStar is incorporated, has headquarters, keeps records, or is registered to do business in North Carolina. *See* Doc. 1 at ¶¶ 5–6; Doc. 15-4 at ¶¶ 4–6; Doc. 34-2 at ¶¶ 4–6. Neither designs or manufactures products, routinely maintains inventory, or has employees here, and both characterize their websites as "passive." Doc. 15-4 at ¶¶ 9–16; Doc. 34-2 at ¶¶ 7–16. Total sales by Avco in North Carolina for 2018 were less than 1% of its global sales. Doc. 15-4 at ¶ 20.

Additional facts will be found and discussed as needed for the Court's analysis.

### B. Analysis

#### 1. Minimum Contacts

The defendants contend Precision cannot show jurisdiction over them based on a single LFC servo sale in North Carolina. *See* Doc. 15 at 13. They are correct that a single sale in the forum, without any other conduct, is likely insufficient to establish specific personal jurisdiction under the traditional minimum contacts analysis. *See J.*

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888–89 (2011) (Breyer, J., concurring).[9]
However, a single sale in the forum coupled with other "deliberate and purposeful" conduct related to the claims at issue and directed to the forum can show purposeful availment. *Gilbarco Inc. v. Tronitec, Inc.*, No. 1:11-cv-352, 2012 WL 1020244, at *5 (M.D.N.C. Mar. 26, 2012) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171–72 (2d Cir. 2010); *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 398–99 (M.D. Pa. 2013). Thus, a plaintiff can show a defendant's purposeful availment through "[a]dditional conduct" indicating "an intent or purpose to serve the market in the forum State," such as "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987).

Here, Avco has demonstrated deliberate and purposeful contacts with North Carolina in addition to its one sale of an LFC servo. Avco has longstanding distribution channels and relationships in North Carolina and has sold its RSA servo engines in this state for years through its distributors and in airplanes sold by a related company. These distribution chains remain in place, and two distributors in the state are available to North Carolina customers who want to buy an Avco engine with an AVStar servo. Avco has used these channels already in at least one sale in the state. Avco advertises its North Carolina distributors using a search feature on its website that encourages sales of its products, including engines with LFC servos, in North Carolina. While not wholly

---

[9] Justice Breyer's concurrence is the controlling precedent on this point. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012).

10

"interactive," the evidence indicates this website is somewhere between "interactive" and "passive" in that it allows customers in North Carolina to search for distributors here. *See Gilbarco*, 2012 WL 1020244, at *5. There is no evidence credibly indicating that these contacts and marketing efforts were random or fortuitous so as to contraindicate purposeful availment, *see Burger King*, 471 U.S. at 475, and the Court finds that they were neither random nor fortuitous.

Overall, these contacts show an intent and purpose to serve North Carolina customers sufficient to assert jurisdiction over Avco. *See Queen Bee*, 616 F.3d at 171–72 (holding a foreign company's sale of one of the counterfeit bags at issue to New York consumers showed purposeful availment there because it had also "developed and served a market for its products there"); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir. 1999) (holding a foreign party's contract with a distributor for sales in North America evidenced an "attempt to serve the New York market, albeit indirectly"); *Armor All/STP Prods. Co. v. TSI Prods., Inc.*, No. 3:17-cv-1131 (MPS), 2018 WL 4158368, at *6 (D. Conn. Aug. 30, 2018) (noting a website and arrangement with distributor were sufficient to establish an "attempt to serve" the forum state market); *Communico, Ltd. v. DecisionWise, Inc.*, No. 3:14-CV-1887 (RNC), 2018 WL 1525711, at *1–2, *6 (D. Conn. Mar. 28, 2018) (finding a prima facie case of minimum contacts where defendants advertised generally via a website and emails and distributed products through a national chain with distributors in the forum state); *see also Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 489 (D.S.C. 2016) (finding defendant "deliberately availed itself of South Carolina" by controlling a South Carolina-based distributor such

11

that sales solicited there were "not the fortuitous result of unilateral action by" the distributor).

Under the unusual facts here, it is also appropriate to exercise personal jurisdiction over AVStar. While the current record does not identify specific acts by AVStar directed towards North Carolina involving LFC servos, AVStar has for years sold its RSA servos directly to consumers in North Carolina and, like Avco, it offers no evidence that it has or will change its distribution channels or sales methods for servos bearing the new LFC mark.

Moreover, AVStar is joined at the hip with Avco when it comes to sales of LFC servos, and the record indicates it has fully participated in the infringement. It is reasonable to infer that AVStar knew when it began selling LFC servos to Avco that these products would be made available and sold through Avco's well-established distribution channels, including in North Carolina, and that AVStar has wide and deep knowledge of Avco's sales and distribution networks. After all, the companies have had a close business relationship and an arrangement for servo supply for over a decade, and they have jointly defended and prosecuted other lawsuits over these trademarks, including litigation in Pennsylvania over damages, which would naturally require disclosing information about Avco's sales throughout the United States. As a result, it is fair to find AVStar has purposefully availed itself of doing business here through its relationship with Avco. *See Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 318–19 (4th Cir. 2000) (finding jurisdiction over non-resident defendant in Virginia that "utilized" its licensee "to place its goods in the stream

of commerce so that the goods would be purchased in Virginia" in violation of a stipulated judgment); *Greenscapes Home & Garden Prods., Inc. v. Testa*, No. 17AP-593, 2019 WL 480201, at *11 (Oh. Ct. App. Feb. 7, 2019) (noting that "[f]ederal courts . . . have found a defendant who sells products to a national or regional retailer for resale to ordinary, individual consumers in the forum state has purposefully availed itself of the privilege of doing business in the forum state" and collecting cases).

The essentially joint development and sale of these LFC servos also favors jurisdiction in North Carolina. As noted above, Avco is AVStar's primary customer for these servos, AVStar developed its servos at Avco's request, and the record and evidence to date establish that AVStar affixes the LFC mark to its servos by agreement with and at the direction of Avco. The defendants are acting as a unit when it comes to using Precision's trademarks. And indeed, Precision has plausibly alleged that Avco and AVStar's use of the LFC marks furthers a longstanding conspiracy to reverse-engineer Precision's servos and intentionally infringe on Precision's trademarks. *See* Doc. 1 at 7. *See generally Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (discussing claims that would enable jurisdiction over coconspirators not present in the forum state); *Griffith v. Gray*, No. 1:16cv235, 2017 WL 388858, at *2 (W.D.N.C. Jan. 9, 2017) (same), *adopted*, 2017 WL 374916 (W.D.N.C. Jan. 25, 2017).

Finally, Avco and AVStar have targeted their alleged trademark infringement against two North Carolina companies, which have borne the brunt of the resulting harm in North Carolina where they operate and experience the financial costs of the alleged infringement. *See Consulting Eng'rs*, 561 F.3d at 280 (defining relevant factors of the

"effects test" for personal jurisdiction, which may "inform[]" the minimum contacts analysis). While the "mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction," *Walden v. Fiore*, 571 U.S. 277, 291 (2014), there are many other facts here linking the defendants to North Carolina, and *Walden* does not require the Court to ignore the unique facts and history of this dispute, which support the inference that the latest infringement is just another step in a long chain of actions by the defendants to take over Precision's market share by mimicking its trademarks.

In *Walden*, the defendant's contact with the forum was fortuitous because the defendant law enforcement officer had seized the plaintiffs' money while they were in transit, and the plaintiffs filed suit in a different state where they had later tried to access the funds. *Id.* at 280. In that case, the plaintiffs' "unilateral activity" of traveling to and trying to access those funds while in the forum could not properly support jurisdiction there, and the defendant's own conduct did not connect him to the forum "in a meaningful way" such that jurisdiction was proper. *Id.* at 290–91. By contrast, there is nothing random or fortuitous about the impact of the defendants' alleged infringement on Precision's trademarks in North Carolina. After all, the alleged trademark infringement is not mere happenstance; Precision alleges that the defendants are using LFC marks confusingly similar to Precision's mark to capitalize on the goodwill of Precision's marks, and a court has previously found that the defendants have intentionally infringed on Precision's marks. *See Avco Corp.*, 2018 WL 1706359, at *8 (finding on summary judgment that "AVStar's copying of the RSA marks was intentional").

14

These facts, along with the other North Carolina contacts discussed above, indicate that the defendants' conduct connects them to this forum in a "meaningful way" and not based on Precision's unilateral activity alone. *Walden*, 571 U.S. at 290; *see, e.g.*, *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 504–07 (D. N.J. 2017) (discussing *Walden* and holding Defendants' contacts with New Jersey were sufficient minimum contacts under due process for jurisdiction there because they "knew that their alleged hacking would harm Plaintiff in New Jersey, . . . affirmatively calculated their alleged hacking activities to harm Plaintiff in New Jersey, and . . . Plaintiff was in fact harmed in New Jersey"); *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1090 n.4 & 1091–92 (D. Or. 2016) (noting that "*Walden* may be factually distinguishable from trademark and copyright cases" and finding defendant's efforts to benefit from plaintiffs' brand recognition, knowing plaintiff was a forum resident, supported minimum contacts under the effects test).

2. Arising Out Of

Under the second factor of the Fourth Circuit's three-part test, the Court must determine "whether the plaintiffs' claims arise out of those activities directed at the State." *Consulting Eng'rs Corp.*, 561 F.3d at 278. Here, Avco has sold at least one engine with an LFC servo in North Carolina and, at the time Precision filed this lawsuit, Avco was attempting to serve this market with allegedly infringing engines in North Carolina by directing customers on its website to contact two North Carolina distributors. AVStar sold the LFC servo to Avco, its primary customer, knowing it has maintained its well-established distribution channels and relationships in North Carolina to distribute the

15

new LFC servos. The dispute before the Court arises out of these contacts. *See Gilbarco*, 2012 WL 1020244, at *6 (finding plaintiff's claims arose out of defendant's activities directed at North Carolina, including selling an infringing product here and publishing website content directed here).

                3. Constitutionally Reasonable

To evaluate whether the exercise of personal jurisdiction is constitutionally reasonable, courts consider "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 279.

Here, the defendants' burden is small. The parties have obtained much of the relevant discovery in other litigation. Additional discovery here will not burden them significantly since this case involves a relatively narrow dispute. Avco also maintains business relationships with two distributors here and has prosecuted and defended lawsuits with plaintiffs and their predecessors in this district before, with no demonstrated difficulties. As the Supreme Court recognized over three decades ago, technological developments in "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," and thus "it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474. Precision has an interest in obtaining convenient and effective relief here,

especially after litigating similar claims for years in Pennsylvania. And North Carolina has an interest in efficiently resolving a dispute involving harm to two companies with a business presence here. *See Bell v. Brownie*, No. 3:15CV70, 2016 WL 447723, at *4 (W.D.N.C. Feb. 4, 2016) ("North Carolina has an interest in both protecting victims of unlawful schemes in the state and discouraging those who might try to profit from such schemes.").

Furthermore, the defendants have directed their allegedly infringing conduct towards two North Carolina-based companies against which they have litigated for years. It was entirely foreseeable that Precision would oppose the decision to use LFC marks within months of a court victory in Precision's favor, finding the RSA marks valid and that the defendants had committed trademark infringement. The defendants could reasonably anticipate defending new claims brought by the defendants in their home forum based on the same trademarks. *See Burger King*, 471 U.S. at 474. *Cf. Stuart v. Churn LLC*, No. 1:19-CV-369, 2019 WL 2342354, at *6 (M.D.N.C. June 3, 2019).

Overall, given the burdens on and interests of the parties, the exercise of personal jurisdiction over these defendants is constitutionally reasonable.

### C. Conclusion

Personal jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King*, 471 U.S. at 476. Precision has made a prima facie showing of personal jurisdiction over defendant Avco based on allegations and supporting evidence that Avco has sold at least one infringing product here; has done so through longstanding distribution channels that it intends to continue using here; and

17

advertises these distributors on its website to solicit sales here.  Defendant AVStar is also subject to jurisdiction because Avco is its "primary customer" of the allegedly infringing products, and AVStar has a longstanding relationship with Avco using the same distribution streams.  Finally, Precision has plausibly alleged that AVStar and Avco have sold these products as part of a conspiracy to replace Precision and benefit from the goodwill associated with their marks, an intentional tort impacting Precision here in North Carolina.

Individually, each contact might not suffice for jurisdiction.  But contacts are properly "considered together" when deciding personal jurisdiction.  *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990).  Considered together, the defendants' contacts indicate purposeful and deliberate availment in this forum.  As Precision's claims arise from these contacts, and the exercise of personal jurisdiction is otherwise constitutionally reasonable, the motion to dismiss will be denied.

### III. Motion to Stay

In the alternative to the motion to dismiss, the defendants moved to stay this action.  Doc. 14 at ¶ 2.  They contended that the pending case is the Middle District of Pennsylvania is a "prior pending action" between the parties.  Doc. 15 at 17–21.  As the defendants recognized at oral argument, the Pennsylvania court has determined that the alleged infringement from the LFC marks was not at issue in that case, *see supra* note 7, and this motion will therefore be denied.

## IV. Scheduling Matters

There remain pending the defendants' motion in the alternative to transfer this case to the Middle District of Pennsylvania, Doc. 14 at ¶ 3, and the plaintiffs' motion for preliminary injunction. Doc. 6. Those motions remain under advisement, but their resolution need not delay the progress of this case towards resolution. Whether the case is transferred or not, the defendants will need to file an answer, and discovery will need to begin so that the case can be resolved on the merits. The parties all have an interest in prompt and efficient resolution of this dispute, in hopes that the litigation between them, now well into its second decade, can come to an end.

Accordingly, in its discretion, pursuant to its inherent authority and Federal Rules of Civil Procedure 16 and 26, and based on its thorough review of the record in this case and previous litigation between and among the parties and their predecessors, the Court will modify the usual deadlines[10] in the Federal Rules of Civil Procedure and the Local Rules as follows: Defendants shall file answers no later than August 30; no extensions are contemplated absent death or similarly serious unexpected event. The parties shall exchange Rule 26(a)(1) disclosures no later than September 13, 2019. The parties shall meet and confer as required by Rule 26(f) no later than September 20, 2019, and shall file their LR 16.2 or 16.3 reports no later than September 27, 2019. The matter is referred to the Magistrate Judge for a pre-trial conference on September 30, 2019, which the Court expects the parties to attend even if they agree upon a schedule so that the Court can

---

[10] The Court established these deadlines by text order entered on August 7, 2019, so the deadlines are not as short as they may seem.

make clear its expectations and so that the Court can ensure the agreed-upon schedule is efficient and will not result in undue delay.

It is **ORDERED** that:

1. The defendants' motion to dismiss on the grounds of personal jurisdiction, Doc. 14, is **DENIED**.
2. The defendants' motion to transfer, also in Doc. 14, remains under advisement.
3. Defendants shall file answers no later than August 30; no extensions are contemplated absent death or similarly serious unexpected event.
4. Rule 26(a)(1) disclosures shall be exchanged no later than September 13, 2019.
5. The parties shall meet and confer as required by Rule 26(f) no later than September 20, 2019, and shall file their LR 16.2 or 16.3 reports no later than September 27, 2019.
6. The matter is referred to the Magistrate Judge for a pre-trial conference on September 30, 2019, which the Court expects the parties to attend even if they agree upon a schedule so that the Court can make clear its expectations and so that the Court can ensure the agreed-upon schedule is efficient and will not result in undue delay.

This the 21st day of August, 2019.

_____
UNITED STATES DISTRICT JUDGE