IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TURN AND BANK HOLDINGS, LLC )
and PRECISION AIRMOTIVE, LLC, )
                              )
         Plaintiffs,          )
                              )
    v.                        )    1:19-CV-503
                              )
AVCO CORPORATION and          )
AVSTAR FUEL SYSTEMS, INC.,    )
                              )
         Defendants.          )

## MEMORANUDM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Defendants Avco Corporation and AVStar Fuel Systems, Inc. ask this Court to reconsider, modify, or clarify its preliminary injunction order prohibiting Avco and AVStar from infringing the plaintiffs' trademarks. In support of the motion, Avco and AVStar submit what they characterize as new evidence, and they also contend that the Court erred in ruling on multiple substantive issues. Because Avco and AVStar have done nothing more than attempt to make more persuasive arguments than they made the first time and because the "new" evidence they ask the Court to consider is not new, the motion to reconsider or modify its preliminary injunction order will be denied. The Court will clarify the Order as to safety communications.

The Court will not repeat the detailed findings and conclusions from the preliminary injunction order, Doc. 46, but will reference them as needed. As is relevant here, the following procedural summary will suffice. This lawsuit was filed in May

2019, and the plaintiffs quickly sought a preliminary injunction. Doc. 6. After briefing and a hearing, the Court granted the motion in substantial part. Docs. 46, 47. AVStar[1] retained new counsel and filed the pending motion for reconsideration. Doc. 54. Soon after briefing was complete, the parties notified the Court they had settled. *See* Docket Entry Dec. 18, 2019. The parties did not finalize the settlement, *see* Doc. 88 (extending time to file stipulation of dismissal to January 31, 2020), and the motion for reconsideration is thus now ripe for resolution.

Preliminary injunctions are interlocutory and, therefore, AVStar's motion for reconsideration is "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).[2] District courts have the discretion to modify or reconsider interlocutory judgments at any time before final judgment, *id.* at 514–15; Fed. R. Civ. P. 54(b), but a motion for reconsideration is not an opportunity to relitigate old matters or to raise arguments or evidence that could have been raised before the order was entered. *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325–26 (4th Cir. 2017); *Ashmore v. Williams*, No. 8:15-cv-03633-JMC, 2017 WL 24255, at *2 (D.S.C. Jan. 3, 2017); *see also* 18B Edward H. Cooper, *Federal Practice and Procedure* § 4478 n.52 (2d ed. Nov. 2019 Update) (observing that permitting a motion for reconsideration for only limited grounds protects

---

[1] For ease of reading and because the defendants have acted collectively as is relevant here, the Court will refer to the defendants collectively as AVStar.

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

the courts and the parties against repeat arguments by unyielding advocates). While the Federal Rules of Civil Procedure do not establish specific standards for evaluating when to reconsider an interlocutory order, most courts will reconsider an interlocutory order only when: "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565–66 (M.D.N.C. 2005) (collecting cases).

## I. New Evidence

In support of its motion for reconsideration, AVStar submits a number of exhibits it characterizes as new evidence unavailable when it responded to the motion for preliminary injunction. Doc. 55 at 8–9. This evidence includes deposition testimony from another case, Docs. 64-2 to 64-5, and a 1988 Asset Purchase Agreement between Allied Signal Inc., a previous seller/owner of the Bendix RS/RSA fuel injection system, and P.A.C. Holdings, Inc., et al., Precision's predecessor in interest. Doc. 64-1 at 8.

AVStar alleges that the evidence was previously unavailable to it because it was subject to a protective order in the Pennsylvania proceeding, which prohibited its use, and that the parties were unable to agree until recently on how to use it in this case. Doc. 84 at 3–5. But AVStar was aware of that litigation and was aware that there were materials filed in that case under seal; indeed, the existence of the agreement is referenced in a public decision by the Pennsylvania court, *AVCO Corp. v. Turn & Bank Holdings, LLC*, No. 4:12-CV-01313, 2018 WL 1706359, at *2 n.11 (M.D. Pa. Apr. 9, 2018), which plaintiffs submitted in this case. Doc. 7-3. Yet it made no effort to ask the court in

3

Pennsylvania to modify the protective order, nor did it advise this Court that there was evidence in the Pennsylvania case it was unable to access. A party is not entitled to reconsideration based on evidence it did not think important enough to gather until after it lost. *See Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 198 (4th Cir. 2006) (deciding not to present available evidence before a decision is a "strategic decision for which the [party] bears the responsibility").

In addition, it does not appear that AVStar made the argument to the Pennsylvania court that it now makes here: that the asset purchase agreement meant that Bendix did not sell its interests in the trademarks to plaintiffs' predecessor. *See AVCO Corp.*, 2018 WL 1706359, at *8 (finding as undisputed fact that "Bendix and its successors-in-interest utilized the RSA marks consistently"), *9 (finding as undisputed fact that "Bendix was the first party to use the RSA marks, and that Bendix, and then Precision WA, used the marks continuously up to 2013 when that [*sic*] TNB purchased them"), *9 n.98 (rejecting other arguments about Bendix's ownership of the RSA marks). The belated effort in this lawsuit to claim that Bendix did not transfer its rights in the RSA marks to the plaintiffs' predecessor further reinforces the conclusion that AVStar is merely attempting to retreat from an unsuccessful strategic decision.

Even if the Court considered the evidence and agreed with AVStar's construction of the agreement, which is a far from certain conclusion, it would not result in a different decision. This would only reduce the time that Precision and its predecessor exclusively used the marks from around sixty years to around thirty years. Furthermore, Precision registered three of its marks on the USPTO's Principal Register in 2017, which creates a

presumption of validity as to those marks and reinforces Precision's claim to secondary meaning. *See* 15 U.S.C. § 1057(b) ("[R]egistration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . .").

## II. The findings of fact in the Pennsylvania proceedings

AVStar also contends that it was clear error for the Court to "rely[] almost exclusively" on the summary judgment order from the Pennsylvania proceedings. Doc. 55 at 19.[3] As an initial matter, and as the Court noted in its preliminary injunction order, the Court did not give the summary judgment order in the Pennsylvania proceeding preclusive effect. Doc. 46 at 8. Rather, the Court found that another district court's recitation of undisputed facts in a case involving the same parties and some of the same issues and its conclusions of law based on those facts were persuasive on the issue of likelihood of success on trademark validity. *Id.* It seems obvious that if one court has found a plaintiff's trademarks to be valid based on a fully developed factual record, that is a very good indicator that the plaintiff is likely to prevail on the question of validity of those same exact trademarks in a second lawsuit.

Second, in the context of a preliminary injunction motion, consideration of this opinion was entirely proper. While AVStar may be correct that such factual findings will

---

[3] "A factual finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Mitchem*, 462 B.R. 608, 612–13 (W.D. Va. 2011) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

be inadmissible at summary judgment or trial, courts have discretion to consider evidence that would otherwise be inadmissible at the preliminary injunction stage. *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017) ("Because preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted."); *see also* 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 30:54 (5th ed. Nov. 2019 Update).

### III. AVStar's Cessation of Use of the LFC marks

AVStar also asks the Court to reconsider its finding of irreparable harm because it stopped using the LFC marks after the preliminary injunction issued. Doc. 55 at 7, 14–15. If a party has ceased the use of an allegedly infringing mark, "an injunction may be unnecessary when there is *no* reasonable expectation that the wrong will be repeated." *Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*, 799 F. Supp. 2d 558, 567 (M.D.N.C. 2011) (emphasis in original). However, the defendant "faces a heavy burden to establish mootness in such cases because otherwise they would simply be free to return to their old ways after the threat of a lawsuit has passed." *Id.*

Another court has found that AVStar infringed these same trademarks and as explained in this Court's previous order, AVStar intended to infringe the marks again when it began to use the LFC marks. Absent an injunction, nothing other than its own

6

non-binding promises prevent AVStar from resuming use of the LFC marks. AVStar's compliance with the preliminary injunction does not support vacating the injunction.

### IV. AVStar's Remaining Arguments

AVStar contends that the Court erred in presuming that irreparable harm will result from its infringement. Doc. 55 at 11–14. This misstates the Court's decision, as the Court did not rely on any such presumption and explicitly found that "the facts in this case support an independent finding of irreparable harm." Doc. 46 at 23.

AVStar's remaining arguments are little more than a re-hash of previous arguments already rejected by the Court and do not warrant additional discussion. *See Regan v. City of Charleston*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014) ("A motion for reconsideration is not, however, an opportunity to relitigate issues already ruled upon simply because a party is dissatisfied with the outcome."). None of AVStar's arguments undermine the Court's previous findings and conclusions.

### V. Clarification of Order

In addition to reconsideration or modification, AVStar asks that the Court clarify its Order. Doc. 54 at ¶ 1. AVStar asks for "clarification that they are permitted to communicate with consumers referencing the LFC model designation through airworthiness directives, service bulletins and other public safety communications." *Id.* Precision does not object to this request so long as AVStar "take[s] steps to avoid further confusion," such as using a disclaimer. Doc. 79 at 9.

The preliminary injunction prohibits AVStar from "[m]aking, using, selling, offering to sell, marketing, advertising, or promoting AVStar's servos" bearing the

infringing marks. Doc. 47 at 2. Communicating with people who have already bought the servos, or who are repairing them, about safety would not seem to be prohibited by this language. To the extent the "in connection with" language that follows might be read to prohibit such communications, the Court will clarify that the preliminary injunction does not prohibit communications about safety, so long as those communications do not independently create confusion as to whose products they reference.

It is **ORDERED** that:

1. The defendants' motion for reconsideration or to modify, Doc. 54, is **DENIED**.

2. The defendants' motion for clarification, Doc. 54, is **GRANTED**, and the Court hereby clarifies that nothing in the Preliminary Injunction Order, Doc. 47, prohibits AVCO and AVStar from communicating with customers or others about previously sold servos bearing the LFC model designations, including referencing the servos by their LFC model designations, as needed and/or as required by the FAA and other regulations, such as in issuing airworthiness directives, service bulletins, and other public safety communications, so long as such communications do not independently create confusion as to whose products they reference.

This the 13th day of February, 2020.

_____
UNITED STATES DISTRICT JUDGE